Daniel R. Lapinski (DL7447)
WILENTZ, GOLDMAN & SPITZER, P.A.
110 William Street
26th Floor
New York, New York 10038-3901
Telephone: (212) 267-3091
Facsimile: (212) 267-3828
dlapinski@wilentz.com

Attorneys for Plaintiffs and the Proposed Class

(Additional counsel appear on signature page)



## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Nicholas Longo and Jibin Thomas, On
Behalf of Themselves and All Others
Similarly Situated,

               Plaintiffs,

    v.

AMERICAN HONDA MOTOR
COMPANY, INC., and MICHELIN
NORTH AMERICA, INC.,

               Defendants.

Civil Case No.: 07 CIV 9339

### CLASS ACTION COMPLAINT

### DEMAND FOR JURY TRIAL



Plaintiffs, Nicholas Longo and Jibin Thomas ("Plaintiffs"), bring this action against

Defendants, American Honda Motor Company, Inc. ("Honda") and Michelin North America, Inc.

("Michelin") (collectively "Defendants"), on behalf of themselves and all others similarly

situated, and allege on information and belief as follows:

### INTRODUCTION

1.    Plaintiffs bring this action for injunctive, declaratory and equitable relief,

damages, restitution and/or disgorgement of profits and additional relief as may be appropriate on

behalf of themselves and all others similarly situated (the "Class," more specifically defined

below) who purchased or leased vehicles manufactured and sold by Honda equipped with the

#3825385

PAX® Tire and Wheel Assembly System ("PAX System") or (the "System"), including, but not limited to, 2005, 2006 and 2007 Honda Odyssey Touring models and the Acura RL models equipped with the "Technology Package" (the "Vehicles").

        2.     The PAX System is comprised of four "run-flat" tires, an inner support ring, a specially-shaped wheel and a tire pressure monitoring system. The PAX System purportedly enables drivers to drive a certain number of miles on a deflated tire to an authorized repair center, thereby obviating the need to carry a spare tire. Honda Odysseys were among the first mass market vehicles, and the first minivans in North America, to adopt the PAX System, which is manufactured by Michelin, and preinstalled by Honda on the Vehicles. At or about the same time, Honda also began equipping certain Acura model automobiles with the PAX System.

        3.     The inclusion of the PAX System on the Vehicles has resulted in widespread discontent, frustration and anger by Class members. As set forth below, Defendants have affirmatively misrepresented the purported benefits of the PAX System and further concealed material information about the System, including that (1) PAX System tires regularly wear prematurely and, therefore, need to be replaced after as few as 15,000 miles; (2) the System's tires are prohibitively expense to repair and replace; and (3) sufficient repair facilities and stock in PAX System tires, rings and wheels do not exist in the United States to meet the basic repair needs of consumers owning the Vehicles. As a result of Defendants' misrepresentations, omissions and acts of concealment, Plaintiffs and Class members have been, and will continue to be in the future, harmed and inconvenienced and subjected to unreasonably high repair and replacement costs.

## THE PARTIES

        4.     Plaintiff, Jibin Thomas ("Thomas") is, and at all relevant times to this action has been, a resident of New City, New York. In or about March, 2005, Plaintiff, Thomas purchased a new 2005 Honda Odyssey Touring Model for his personal and family use from White Plains Honda, an authorized Honda dealership in White Plains, New York. The Honda Odyssey Touring Model purchased by Thomas came equipped with the PAX System.

- 2 -

5.    Plaintiff, Nicholas Longo ("Longo") is, and at all relevant times to this action has been, a resident of Scarsdale, New York. In or about July, 2005 Plaintiff Longo purchased a new 2005 Honda Odyssey Touring Model for his personal and family use from Honda of New Rochelle, an authorized Honda dealership in New Rochelle, New York. The Honda Odyssey Touring Model Longo purchased came equipped with the PAX System.

6.    Defendant, Honda, is a California corporation with its principal place of business in Torrance, California. Honda designs, manufactures, markets and sells automobiles, including Vehicles equipped with the PAX System. Acura is Honda's luxury brand and the product of an operating division launched by Honda in or about March 1986. The Acura division maintains its principal place of business at Honda's Torrance, California, headquarters. Honda conducts a significant amount of business, including marketing, sales and maintenance of the Vehicles, in the state of New York.

7.    Defendant Michelin is a New York corporation headquartered in Greenville, South Carolina. Michelin designs, manufactures, markets and sells tires and wheel systems, including the PAX Systems installed on the Vehicles. Michelin does a significant amount of business in New York, including, but not limited to, marketing, selling and supplying to Honda the PAX Systems installed and replaced on the Honda and Acura Vehicles.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the parties and claims alleged herein pursuant to 28 U.S.C § 1332(d)(2) because, on information and belief, there are at least 100 Class members in the proposed Class, the combined claims exceed $5,000,000, exclusive of interests and costs, and/or Class members are citizens of a state other than that of Defendant, Honda.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendants purposefully availed themselves of the privilege of conducting business activities in New York, including, but not limited to selling the Vehicles equipped with PAX Systems to Plaintiffs and members of the Class.

- 3 -

## FACTUAL ALLEGATIONS

### Defendants Misrepresented To And Actively Concealed From Plaintiffs And The Class Material Information Regarding The Vehicles And The PAX System.

10.     With the release of certain 2005 vehicles, Honda began offering the PAX System as an expensive feature on certain Honda and Acura vehicles. The Vehicles at issue, which have a suggested retail price of $35,000 to $50,000, are manufactured, marketed and sold by Honda (and its Acura division) through a network of licensed dealers and distributors.

11.     Honda manufactures, assembles, markets and sells the Vehicles to consumers with the PAX System preinstalled as a Vehicle component. Vehicles equipped with the PAX System are at least several thousand dollars more expensive than comparable models without the PAX System.

12.     Throughout the period during which Honda (and its Acura division) has offered Vehicles equipped with the PAX System, Defendants engaged in a uniform marketing and sales campaign, in which they misrepresented to and/or concealed from Plaintiffs and the Class material information regarding the Vehicles and the PAX System, including, but not limited to the fact that: (a) the PAX System tires are defective and prone to premature wear and failure; (b) neither Defendants nor any third party maintain (i) sufficient facilities equipped to repair or replace the PAX System tires, (ii) a sufficient stock of replacement PAX System tires, rings and wheels, so that a damaged PAX System can be repaired or replaced in a reasonable period of time and at a reasonable location, and (c) the maintenance and repair costs of the PAX System are many times higher than is reasonably expected and represented to consumers. Defendants' misrepresentations and omissions regarding the Vehicles equipped with the PAX System are consistent and uniform.

13.     As part of their marketing campaign, Defendants have consistently misrepresented and/or concealed material facts in their advertisements, sales and marketing materials, warranties, and through their sales representatives and dealers, by misrepresenting that Vehicles equipped with the PAX System offer drivers superior safety and convenience, falsely

- 4 -

representing that drivers will not be inconvenienced in the event of a flat tire and that sufficient authorized repair facilities and PAX System stock are available.

14.    Since approximately August 2004, for example, Defendants have falsely portrayed the Vehicles and PAX System as providing a worry-free safety system that offers consumers "the convenience and security of knowing that they will not be stranded with a flat tire while offering numerous benefits over conventional run-flat tires and radial tires" and assured consumers that they "no longer run the risk of having to stop in dangerous or uncomfortable situations (night, rain, highways, etc.) and there is a much wider choice on when and where to change a tire." (http://www.hondanews.com/categories/908/releases/2084:) ("Honda Media Newsroom Release")

15.    Despite their representations to the contrary, Defendants maintain sufficient repair and replacement facilities or PAX System tire, ring and wheel stock to adequately service the Vehicles with the PAX System being marketed, advertised and sold to the public.  Instead of disclosing this material information to Plaintiffs and the Class, however, Defendants offered false, misleading and deceptive assurances that the System would enhance safety and convenience, and that tire repair and replacement would be quick and convenient. Defendants falsely represented that Honda dealerships would be equipped to repair and replace PAX System tires "to further insure that customers will have quick and convenient access to wheel repair" and that Michelin dealers would be also equipped with PAX tire mounting and dismounting capabilities to "further enhance the convenience of PAX tires." *See* Honda Media Newsroom Release.

16.    Honda also issued additional false, misleading and deceptive statements in its sales brochures, which boast, among other things, that "[w]ith Michelin PAX System, new on the Odyssey Touring Model, you'll discover new levels of confidence driving in an uncertain world."  Honda similarly included misleading and deceptive information relating to the purported convenience and safety of Vehicles equipped with the PAX System in the warranty materials provided to consumers.  In the 2005 Odyssey Warranties, for example, Honda misrepresents to purchasers that, in the event of a flat tire, the driver can simply "drive to the nearest Honda dealer

- 5 -

or authorized Michelin PAX System dealer to have the tire(s) repaired." However, very few Honda or Michelin dealers are equipped to repair or replace the PAX System tires, very few Honda or Michelin dealers maintain PAX System tires, rings and wheels in stock to complete repairs or replacements, and very few Honda or Michelin dealers are willing to invest in the equipment necessary to repair a damaged PAX System tire in light of the expense associated with procuring such equipment.

17.    Contrary to Defendants' false and misleading statements, many, if not most, of Defendants' dealers do not have the equipment necessary to repair and replace the tires. In some states, PAX System repair facilities are lacking altogether.

18.    Only authorized Honda and Michelin dealers are permitted to repair or replace the PAX System tires, and the special equipment required for mounting and dismounting PAX tires from the wheel in the event of a flat tire is extremely expensive. As a result, very few dealers or third party repair centers are adequately equipped and supplied to meet the needs of Vehicle owners. In some cases, the dealers are only willing or able to replace a PAX System tire pre-installed on a PAX wheel, which is significantly more expensive than simply repairing or replacing the tire.

19.    Defendants further misled consumers with respect to Michelin's service program. In a September 27, 2004, press release, for example, Michelin represented that Vehicle owners would be less likely to interrupt or delay their trip in the event of a flat tire, deceptively stating that Michelin "has created a multi-tiered service program designed to maintain the highest levels of consumer satisfaction by replacing or repairing PAX System tires quickly." *See* http://www.michelinmedia.com/pressSingle/value=MCH2005052648238/kw=/kw2=. Defendants' marketing and sales materials indicate that facilities equipped to repair the PAX Systems are widely accessible and Defendants further claim that Michelin will deliver PAX System tires within 12 hours of a service call. Defendants reinforced this message by and through their sales representatives in urging Plaintiffs and members of the Class to purchase Vehicles equipped with the PAX System at a significantly higher price than those not equipped with the system.

- 6 -

20.    The fact that many Honda, Michelin and third party dealerships are not adequately equipped to repair or replace the PAX System tires is a material fact which a reasonable person would consider important in deciding whether or not to purchase (or pay a premium price for) a Vehicle equipped with the PAX System. Plaintiffs and Class members, as reasonable consumers, expected that Honda and Michelin dealerships would have the equipment required to adequately repair or replace the PAX System tires. Plaintiffs and Class members would not have purchased, or would have paid significantly less for, their Vehicles had they been informed of the material information regarding the inability of many dealerships to repair or replace the PAX System tires.

21.    Defendants had exclusive knowledge of the fact that many of their dealerships were not equipped to adequately repair and/or replace the PAX System tires. Defendants were further made aware of this fact as a result of the numerous complaints they received about the lack of adequate repair facilities from their customers and dealers.

22.    Defendants also made false statements to and/or concealed from Plaintiffs and the Class material information regarding the unreasonably high costs of repairing and replacing the PAX System tires, falsely indicating that the cost of maintaining and repairing PAX System tires is only marginally higher than that of standard tires. Michelin falsely represents, for example, that repair and replacement of PAX System tires cost only 10% to 15% more than standard tires. *See* (http://www.michelinman.com/difference/innovation/paxsystem_faq.html) ("Michelin PAX System FAQ"). Replacement and repair costs of the PAX System tires are, in fact, considerably higher than Plaintiffs and Class members could have reasonably anticipated. As *The Wall Street Journal* recognized, "[f]or consumers who have long viewed tires as a cheap, long-lasting commodity, the spread of run-flats has led to frustration and sticker shock at replacement time…. In addition, he may have to replace two tires at once to maintain proper tread-wear balance - a lesser problem with many conventional tires." (*'Run-flat' tires: drivers fault cost, durability*, The Wall Street Journal, Jul. 24, 2007.)

23.    Upon information and belief, Honda issues General Orders to its dealers and distributors regarding the sale and marketing of the Vehicles. Because no General Orders

- 7 -

regarding disclosure of the unusually high cost of repairing or replacing the PAX System tires have been issued by Honda headquarters, Honda dealerships make uniform false representations, conceal and/or fail to disclose material information regarding the high cost of owning a Vehicle with PAX System tires to Plaintiffs and Class members. At all pertinent times, these Honda dealerships were acting for and on behalf of Honda. The misrepresentations and failure to disclose were uniform.

24.    The cost of replacing four PAX System tires is typically at least $1,200, with many Class members paying significantly more. Mounting costs are reportedly an additional $60-$100 per tire. In contrast, replacement of a standard tire costs approximately $120.

25.    Repairing the PAX System tires is also significantly more expensive than repairing a standard tire. While a repair on a standard tire generally costs about $25, repairing a simple puncture in a PAX System tire at an authorized repair facility costs more than $100. Defendants never disclosed to Class members that the cost of repairing or replacing PAX System tires is considerably more than the cost of repairing or replacing standard tires.

26.    The fact that PAX System tires are unreasonably expensive to repair or replace is a material fact, which a reasonable person would consider important in deciding whether or not to purchase (or to pay a premium price for) a Vehicle equipped with the PAX System. Plaintiffs and Class members, as reasonable consumers, expected that the cost of repairing and replacing PAX System tires would not cost significantly more than the cost of repairing and replacing standard tires. Plaintiffs and Class members would not have purchased, or would have paid less for, their Vehicles had they been informed of material information regarding the high price of repairing, replacing and maintaining the PAX System tires.

27.    Defendants had exclusive knowledge of the true, inflated costs associated with repairing and replacing the PAX System tires. Defendants had access to data regarding the costs of the PAX System tires, as well as access to the multitude of complaints received from consumers regarding the costs of replacing and repairing the System tires.

- 8 -

28.    Defendants also misled Plaintiffs and Class members by marketing (and selling at an inflated price) Vehicles with the PAX System tires as superior in quality, while failing to disclose and/or concealing that the Vehicles and PAX System are inherently defective in that the PAX System tires prematurely fail under ordinary use conditions and well in advance of their expected useful life. Consumers have been led to believe that the PAX System tires "[p]rovide excellent tread wear for longer life" and/or that the PAX System tires will last at least as long as a standard tire. *See e.g.,* Michelin PAX System FAQ. Despite this, Defendants misrepresented and/or failed to disclose that the PAX System tires do not last as long as standard tires, but instead wear prematurely.

29.    Despite Defendants' uniform written and oral misrepresentations, the PAX System tires wear through the usable tread after as little as 15,000 miles under ordinary use and conditions. A standard tire's useable tread lasts 40,000 miles or more under ordinary use and conditions. Thus, Plaintiffs and Class members have been and will continue to be harmed and have and will continue to have to replace PAX System tires on their Vehicles more frequently than represented, at a significant cost, and at their own expense.

30.    The tire warranty materials Defendants distributed to Plaintiffs and Class members contain and further reiterate false and misleading statements regarding the quality of the PAX System tires. The PAX System tires are under warranty for six years or for the life of the original useable tread. The "useable tread" is the original tread down to the level of the treadwear indicators, *i.e.,* $2/32^{nds}$ of an inch tread remaining. Because the PAX System tires wear through the useable tread after as little as 15,000 miles under ordinary use and conditions, however, the six-year warranty period is highly deceptive.

31.    Honda's own warranties are also deceptive and have been materially breached. Honda assembles, markets, and sells the Vehicles with the PAX System preinstalled as a component of the Vehicles. Honda thus provided Plaintiffs and members of the Class an implied warranty that Vehicles with the PAX System are merchantable and fit for the ordinary purposes for which they were sold. In fact, the Vehicles are not fit for ordinary purpose of reasonably reliable and safe transportation because, *inter alia*, they are defective, prone to

- 9 -

premature wear and not capable of being timely and reliably repaired or replaced in a reasonably convenient manner.  Honda also expressly warrants the Vehicles for 3 years or 36,000 miles.

32.    The fact that PAX System tires wear prematurely is a material fact, which a reasonable person would consider important in deciding whether or not to purchase (or to pay a premium price for) a Vehicle equipped with the PAX System, particularly considering the high cost of repairing or replacing the System tires.  Plaintiffs and Class members, as reasonable consumers, expected that the PAX System tires would not prematurely wear and, instead, would last for at least 40,000 miles before requiring replacement.  Plaintiffs and Class members would not have purchased, or would have paid less for, their Vehicles had they been informed that the tires are defective and wear prematurely.

33.    Defendants had exclusive knowledge of the premature wear experienced by the PAX System tires.  Defendants had access to relevant data regarding the wear and, further, had knowledge as a result of the numerous complaints they received from consumers regarding premature tire wear.

34.    Due to the inherently defective nature of the PAX System, the Vehicles and System tires are unreliable and do not perform in accordance with the reasonable expectations of Plaintiffs and the Class.

35.    Defendants have been on notice that the Vehicles and PAX System tires are defective and do not comport with the representations made in the advertising, marketing and sale of the Vehicles and System by, *inter alia*, customer complaints, warranty claims, field technicians, and mounting demand for replacement PAX System tires.  Indeed, replacement PAX System tires are currently unavailable and on back-order at many authorized dealerships.

36.    Defendants concealed their knowledge of the defective nature of Vehicles equipped with the PAX System and the unavailability of reasonably convenient and affordable maintenance and repair from Plaintiffs and the Class.

37.    Defendants have not corrected false and misleading statements regarding the Vehicles and the PAX System, but have instead continued to advertise, manufacture, distribute and sell the Vehicles equipped with the PAX System at a premium retail price.

- 10 -

38.    Indeed, Defendants continue to misrepresent and/or advertise to Plaintiffs and the Class that the Vehicles and PAX System "provide[] convenience, added safety and peace of mind for our customers," despite knowledge of the problems, costs and inconveniences described herein.  (Christopher Jensen, *Run Flat Tires: Are They Solving a Problem or Creating Several?*, NYTimes.com, Mar. 11, 2007.)

39.    As a result of Defendants' misconduct, Plaintiffs and the Class have been harmed and suffered injury in fact and/or actual damages.

40.    Vehicles equipped with the PAX System cost thousands of dollars more than the same vehicles without the PAX System. The tires on the System also cost hundreds, if not thousands, of dollars more than standard tires to repair or replace.

41.    Plaintiffs and Class members have been injured and lost money because they have paid more for the Vehicles than they would have had Defendants disclosed material information regarding the PAX System, and because they have had to pay unreasonable sums of money to repair and/or replace tires, and costs associated with the inconvenience of finding a facility equipped to repair the System tires.

42.    Inconvenience, unreasonably high costs and/or premature failure cause further injury to Plaintiffs and the Class by virtue of the fact that they cannot safely enjoy full use of their Vehicles.  Contrary to Defendants' misrepresentations, Vehicle owners cannot obtain timely repairs or replacements of PAX System tires in many areas, rendering travel in certain areas insecure and hazardous.

43.    Plaintiffs and members of the Class would not have purchased Vehicles with the PAX System, or would have paid less for those Vehicles equipped with the System, had Defendants' misleading marketing and sales statements disclosed that the PAX System did not provide the additional safety and convenience promised, cost significantly more to repair and/or replace, and/or were defective in that they wear prematurely.  Plaintiffs and the Class have also been harmed and suffered actual damages because the PAX System tires begin to wear prematurely under normal use and conditions from the time the owner begins driving the Vehicle. Thus, Plaintiffs and the Class have suffered and will continue to be harmed and suffer damages

- 11 -

because the PAX System tires wear prematurely, the Vehicles and PAX System tires will continue to require replacement and repair, and replacement and repair will continue to be unreasonably inconvenient, unsafe and costly.

## Plaintiff Longo's Experience With The PAX System

44.    In or about July 2005, Plaintiff Longo purchased a 2005 Honda Odyssey Touring Model Vehicle for is personal use and family use from Honda of New Rochelle, an authorized Honda dealership in New Rochelle, New York.  The Honda Odyssey Touring Model Plaintiff Longo purchased came equipped with the PAX System.

45.    The Touring Model equipped with the PAX System was significantly more expensive than comparable models not equipped with the PAX System.

46.    On or about June 1, 2007, Plaintiff Longo took his vehicle to an authorized Michelin tire dealer in New Rochelle, New York to have all four (4) tires on his Vehicle replaced due to tread wear.  At the time of the visit Plaintiff Longo had only driven approximately 25,000 miles on the tires.  Plaintiff Longo went to the authorized Michelin tire dealer because Honda of New Rochelle did not have the equipment needed to replace the PAX tires.

47.    Plaintiff Longo replaced the four tires on the Vehicle at a cost of approximately $1,600.

48.    Prior to purchasing the Vehicle from Honda of New Rochelle, Plaintiff Longo was not informed that the cost of replacement of PAX System tires would be many times higher than the replacement cost of standard tires, or that PAX System tires were subject  to premature wear, or that punctures to the PAX System tires could not be repaired.

49.    Honda failed to disclose material information regarding the Vehicle and the PAX System, including that neither Honda nor any third party maintain sufficient PAX stock or repair or replacement facilities equipped to address the needs of consumers, including Plaintiff Longo, who required premature replacement of the PAX System tires.  Honda also failed to disclose and misrepresented to Plaintiff Longo that the PAX System would not be significantly more expensive to maintain and repair than a standard tire and wheel system.  Plaintiff Longo

- 12 -

justifiably relied on these representations and omissions of material fact when he decided to purchase the Touring Model equipped with the PAX System.

50.      Had Honda disclosed the true nature of the Vehicles equipped with the PAX System, including the unreasonable inconvenience, safety concerns and expense associated with maintaining and repairing the PAX System tires, Plaintiff Longo would not have purchased (or would have paid substantially less for) the Vehicle and/or the PAX System.  As a result of Defendants' unlawful, fraudulent or unfair conduct, Plaintiff Longo suffered an injury in that he would not have purchased the Vehicle had he known about the problems associated with the PAX System.

### Plaintiff Thomas' Experience With The PAX System

51.      In or about March 2005, Plaintiff Thomas purchased a 2005 Honda Odyssey Touring Model Vehicle for his personal and family use from White Plains Honda, an authorized Honda dealership in White Plains, New York.  The Honda Odyssey Touring Model Plaintiff Thomas purchased came equipped with the PAX System.

52.      In or about September 2006, during a routine maintenance visit, Plaintiff Thomas was informed that his tires were in need of replacement due to the tread being worn down.  At the time of the visit Plaintiff Thomas had only driven approximately 27,000 miles on the tires.  Due to the prohibitive cost of replacing the tires, in lieu of paying nearly $1,600, Mr. Thomas continued to drive on tires with excessive tread wear.

53.      Plaintiff Thomas eventually replaced the tires on the Vehicle at a cost of approximately $1,000.  In order to receive the discounted replacement cost Plaintiff Thomas had to drive to Albany, New York.

54.      Prior to purchasing the Vehicle from White Plains Honda, Plaintiff Thomas was not informed that the cost of replacement of PAX System tires would be many times higher than the replacement cost of standard tires, or that PAX System tires were subject to premature wear, or that punctures to the PAX System tires could not be repaired.

55.      Honda failed to disclose material information regarding the Vehicle and the PAX System, including that neither Honda nor any third party maintain sufficient PAX stock or

- 13 -

repair or replacement facilities equipped to address the needs of consumers, including Plaintiff

Thomas, who required premature replacement of the PAX System tires. Honda also failed to

disclose and misrepresented to Plaintiff Thomas that the PAX System would not be significantly

more expensive to maintain and repair than a standard tire and wheel system. Plaintiff Thomas

justifiably relied on these representations and omissions of material fact when he decided to

purchase the Touring Model equipped with the PAX System.

        56.     Had Honda disclosed the true nature of the Vehicles equipped with the

PAX System, including the unreasonable inconvenience, safety concerns and expense associated

with maintaining and repairing the PAX System tires, Plaintiff Thomas would not have purchased

(or would have paid substantially less for) the Vehicle and/or the PAX System. As a result of

Defendants' unlawful, fraudulent or unfair conduct, Plaintiff Thomas suffered an injury in that he

would not have purchased the Vehicle had he known about the problems associated with the PAX

System.

### Class Members' Experiences With The PAX Tire System

        57.     The experiences of Plaintiffs mirror those of the thousands of other Vehicle

owners and lessees. The internet is replete with references to the common and profound

problems that consumers have experienced with the PAX System tires, including, but not limited

to, the following small sample of representative complaints appearing in a Consumer Reports on-

line tire forum:

- Acura is not requiring its 250 dealers to buy the special repair equipment because few RL's are sold with the PAX, Mr. Naughton said. He said about 15 percent of Acura dealers had the equipment.

- In my opinion, that's THE biggest problem with the Michelin PAX system. .... This is Honda's problem, through and through.... Honda is choosing not to support its customers via a conscious decision to not equip its dealers with a means to service its vehicles.

- This is akin to Chevrolet not requiring its dealerships to train its technicians on Corvette-specific repairs because "few" Chevrolets sold are actually Corvettes. Unthinkable. Chevrolet would be raked over the coals over something like this. I hope Honda gets its due.

- Last year we researched mini-vans and really felt the Honda

- 14 -

Odyssey was the best. We were looking at the EX-L and did a last minute upgrade to the Touring model. We never found a bad review on it or heard anything negative about the tires. We loved it. Over the summer, my wife got a flat and was [sic] over 60 miles from the closest dealership. She went to a tire store and they couldn't help her. She had to take the car to the dealership. Ten miles into the drive, she could no longer steer the car or drive it without serious noise and bumping. She had to pay for a tow!

- The issue might also naturally attenuate on its own. This isn't the first time Michelin has designed a tire/wheel package. Remember the Michelin TRX tires? Those were designed to be fitted to special rims, and they actually saw a few OE fitments, like Ferraris, Mustangs, even Escorts I believe. It wasn't very popular, because of the lack of tire choice (obviously, just one tire), and probably the cost. As I understand it, the Michelin PAX system is a relatively new whack at the EMT concept because the tires themselves are not very different from the standard Energy LX4 you'd buy in the store, in terms of construction. But the tire/wheel package has an inner "bladder" on which the vehicle rides when air pressure is lost. Similar in concept to the tire/inner liner that NASCAR uses on super speedways. The benefits they claim are that, unlike a "normal" EMT, you don't get the increased ride harshness due to the fortified sidewall, but you maintain the ability to drive on zero pressure. Maybe this concept will grow; maybe it won't. Honda decided to try it on the Odyssey, and it seems like they're not doing the technology any favors (as you suggest) by ripping off their own customers with replacements....

- My 2005 Honda Odyssey LX comes standard with the Michelin PAX "run-flat" tire system. This system has been a nightmare. The Honda dealers can only replace the entire wheel assembly even with a minor nail puncture of the tire. Luckily such puncture[s] are protected by the warranty; the warranty is voided when any damage occurs to the wheel's sidewalls. We regrettably brushed up against a road curb and put a gash in the rear wheel sidewall and a minor nick in the rim. I now must purchase an entire wheel assembly for $600, if I can get one. The Honda dealers stock only a limited quantity and I am now waiting to hear when one will come in. The last time I had a nail puncture I had to wait 2 weeks for my Honda dealer to get a wheel assembly. I can't believe that Michelin would bring such a system to market and that Honda would tie its customers to such a product....

- Replacement Michelin PAX tires for the Touring Honda Odyssey can cost over $600 each at many Honda dealers and take[s] days to obtain. At least one ... subscriber's vacation has been ruined due to the runflat tire. Useful life is around 20,000 miles....

- And the aggravating factor in the case of the Honda Odyssey is the wheels and tires of the Michelin PAX system are designed to be used together. With "conventional" run flat tires, even if one isn't available, you could mount a conventional tire to get moving again, in an emergency.

- 15 -

- In the case of the PAX tires, you don't even have that option.  And if Honda dealers aren't stepping up to purchase[] the equipment to service their vehicles -- that's "less than ideal".  :-(

- This is such a night mare!...  Over $600 for a tire that lasts 20,000 miles is a joke. All the good safety attributes of the run flat and tire pressure monitoring are being negated by Dealers and days of an out of service cars that get a flat tire because few spares are in stock around the country.

- I would like to add to a previous story about PAX tires.  I own a Odyssey Minivan Touring model as noted by a previous poster the Touring model of this van only comes with Michelin PAX tires. On Aug 12th we discovered we had a flat tire.  I took the car to the dealer where at 24K miles I was informed the tire had only 2/32 of tread life left the tires were not under warranty and that a replacement would cost me $613.  Essentially the dealers in the Houston area and in many others as I understand it are selling you a rim and tire assembly and will not give any credit back for the existing rims.  None of the dealers here have invested in the equipment to change the tires.  I was able to find one Discount Tire that had actually invested in the equipment to change the tires and they are now replacing my tires for ~$300 a piece.  While still expensive this is at least bearable.  The problem now however is they don't carry the tires in stock and have to order them. As of this writing I have been without the basic use of the van now for 4 days and I am expecting it take at least another 2 or 3 days to get it back.  If I had been needing the use of the van I would have had no choice but to pay the $600 for the tire

- While the run flats maybe good about getting you out of a jam on a freeway or highway at these prices and headaches it seems to me to be a poor solution.   You would be better off and save money investing in AAA membership to avoid having to change a flat on the freeway.

- I wish in December of '04 I had access to better information on this subject.  I believe I would have chosen another model or another van....

- Sorry to hear about your story; unfortunately, it is a fairly common one.

Run flat tires can be summarized into two points;

1)  Your wallet will be flat if you get a flat.

2)  As you wrote: Run flat will get you out of a jam temporarily, but you'll likely be stranded for days afterwards.

Your story reminded me of a family ... who has run flat tires.  They got a flat on the [way] to Florida, got stuck for days on the way due to none availability of run flats.  Once the run flats were available, vacation time was over.  And they had to drive back home.  Sounds like a vacation from hell.

- My concern is the tread life, safety and availability of these new run flat tires at a reasonable cost. If the run flat tires are only ten to 15% more in cost than the standard tires everything else being equal they will replace the standard radial tires for all future cars. But if the dealers do not return the core rebates to their customers and the tires only last 20,000 miles it will be a failed technology.

- I have the michelin pax tires on my odyssey with only 19,000 miles. When I called the dealership to get new tires [they] couldn't even help me. What good is a tire that you can't get replaced[?]

## TOLLING OF THE STATUTE OF LIMITATIONS

58.    The causes of action alleged herein accrued upon discovery of the latently defective nature of the Vehicles. Because the defect and limitations alleged herein are latent and because Defendants took steps to conceal the true character, nature and quality of the Vehicles equipped with the PAX System tires, among other reasons, Plaintiff and members of the Class did not discover and could not have discovered the problems and defects alleged herein through the exercise of reasonable diligence.

59.    Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the defects and problems alleged herein because of Defendants' fraudulent concealment. In addition, Defendants continue to sell Vehicles and replacement PAX System tires without disclosing the defects and problems.

60.    Defendants were and are under a continuous duty to disclose to the Plaintiff and Class the true character, quality, and nature of the Vehicles and PAX System. Defendants knowingly, affirmatively, and/or actively concealed, and continue to conceal, the true character, quality and nature of the Vehicles and Systems at issue. Defendants also continue to sell Vehicles and replacement PAX System tires while concealing the defects and true character, quality and nature of the Vehicles.

61.    Defendants knew or should have known that Plaintiff and the Class would reasonably rely upon Defendants' knowing, affirmative, and/or active concealment. Based on the

- 17 -

foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated members of the Class defined below pursuant to the Federal Rules Civil Procedure 23(a) and (b)(3). This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions. The Class is defined as follows:

> All persons and entities residing in New York that purchased or leased,
> not for resale or assignment, an Acura or Honda vehicle equipped with the
> Michelin PAX® Tire and Wheel Assembly System.

63.    Excluded from the Class are: (1) Defendants, any entity or division in which any Defendant has a controlling interest, and its/their legal representatives, officers, directors, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; (3) non-New York citizens; and (4) claims for personal injury, wrongful death and emotional distress and claims of consequential property damage and loss.

64.    The Class is comprised of many thousands of purchasers and lessees of the Vehicles equipped with the PAX System in New York, making joinder impracticable.

65.    The Class is composed of an easily-ascertainable, self-identifying set of persons who purchased Vehicles equipped with the PAX System. Moreover, Class members are easily identifiable from records maintained by, and in the possession and control of, Defendants, or otherwise readily obtained from third parties. Class members can be ascertained (and can ascertain their own membership in the Class) based upon their purchase or lease of a Vehicle equipped with the PAX System.

66.    The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, purchased Vehicles equipped with the PAX System and have suffered injury as a result.

67.    Moreover, the factual bases of Defendants' misconduct are common to all Class members, and Defendants' misrepresentations, omissions and acts of concealment resulted in injury to all members of the Class.

68.    There are numerous questions of law and fact common to all Class members and those questions predominate over any questions that may affect only individual Class members, including, but not limited to the following:

a.    Whether Defendants concealed from the Class that, in the event of tire failure, neither Defendants nor any third party had sufficient repair and replacement facilities and/or equipment to meet consumer needs;

b.    Whether Defendants concealed or failed to disclose that the repair and replacement costs for PAX System tires were significantly higher than the costs associated with standard tires;

c.    Whether the Vehicles and PAX System are defective in that the System tires experience premature wear, well in advance of the reasonable expectations of consumers and their anticipated useful life;

d.    Whether and when Defendants knew of the defective nature of the System;

e.    Whether Defendants actively concealed or intentionally failed to disclose information regarding the problems with and/or defective nature of the Vehicles and the PAX System;

f.    Whether the information Defendants concealed or failed to disclose was material;

g.    Whether Plaintiffs and the Class acted to their detriment as a result of Defendants' concealment and/or omissions;

h.    Whether Defendants issued false and misleading statements of fact and/or concealed material facts regarding Vehicles equipped with the PAX System likely to deceive the public;

      i.       Whether Defendants knew or should have known that their statements about the Vehicles and the PAX System were false and/or misleading;

      j.       Whether Defendants engaged in deceptive or fraudulent business practices with respect to the advertising, marketing and sale of Vehicles equipped with the PAX System;

      k.       Whether Plaintiffs and the Class are entitled to equitable relief, and, if so, the nature of such relief;

      l.       Whether Defendants have been unjustly enriched such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiffs and the Class;

      m.       Whether Defendants breached implied warranties of merchantability and fitness; and

      n.       Whether compensatory, consequential and punitive damages should be awarded to Plaintiffs and Class members.

69.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel highly experienced in prosecuting class actions, including actions involving defective consumer goods.

70.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the individual Class members' claims, absent a class action most Class members would likely find the cost of litigating their claims against Defendants to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

72.    The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of this consumer problem.

## FIRST CLAIM FOR RELIEF
### Violations of New York's Deceptive Trade Practices Act (N.Y. Gen. Bus. Law §349, *et seq.*)

73.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

74.    New York's Deceptive Trade Practices Act ("NYDTPA") prohibits "deceptive acts and practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state…"  Defendants' conduct, as described above is unlawful.

75.    Defendants violated the NYDTPA when they represented, through their advertising, warranties and other express representations, that the Vehicles equipped with the PAX System had characteristics and benefits that they did not actually have.

76.    Defendants violated the NYDTPA when they falsely represented, through their advertising, marketing, and other express representations, that the Vehicles equipped with the PAX System were of a certain quality or standard when they were not.

77.    Defendants violated the NYDTPA by fraudulently concealing from and/or failing to disclose to Plaintiffs and the Class the true nature, inconvenience and costs associated with driving a Vehicle equipped with the PAX System.

78.    Defendants violated the NYDTPA by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing and other communications, material information about the Vehicles and PAX System in a manner that was deceptive.

79.    Defendants violated the NYDTPA by holding the Vehicles equipped with the PAX System out as superior in quality (and, thus, more expensive), when, in fact, they were defective and unreasonably inconvenient and expensive to repair.

80.    To this day, Defendants continue to violate the NYDTPA by continuing to actively conceal the material information about the Vehicles and the PAX System and by representing to Plaintiffs and members of the Class that the Vehicles and PAX System are free of defects, affordable to maintain and/or provide superior convenience and/or safety.

81.     As a direct and proximate cause of Defendants' violations of the

NYDTPA, Plaintiffs and the Class have suffered injury in fact and/or actual damage, in that they

purchased Vehicles with PAX System tires that are unreasonably expensive and inconvenient to

repair and/or replace.

82.     Plaintiffs and Class members relied on Defendants' misrepresentations.

Had Defendants disclosed in their marketing and sales statements the true quality and drawbacks

of the Vehicles equipped with the PAX System, Plaintiffs and the Class would not have

purchased, or would have paid significantly less for, the Vehicles equipped with the PAX System.

Plaintiffs and the Class have suffered further harm in that the PAX System tires wear prematurely

from the time the Vehicles are first driven, they have paid or will be required to pay significantly

more to repair or replace the PAX System tires than is reasonably anticipated and represented,

have lost use of their Vehicles, and suffered diminution in value.

83.     Plaintiffs and Class members suffered an injury in fact and lost money in

that, had Defendants disclosed the true nature, quality and drawbacks of the Vehicles equipped

with the PAX System as alleged herein, they would not have purchased, or would have paid

significantly less for, their Vehicles.  Plaintiffs suffered further injury in fact and lost money

because they paid far more to repair or replace the PAX System tires on their Vehicles than was

reasonably anticipated and represented by Defendants and because they were required to travel to

find a facility equipped to repair the PAX System tires on their Vehicles.

84.     Plaintiffs, on behalf of themselves and all others similarly situated,

demand judgment against Defendants for injunctive relief in the form of restitution and/or

proportional disgorgement of funds paid by Plaintiffs and the Class to purchase the Vehicles

and/or disgorgement of funds received by Defendants from the sale of Vehicles equipped with the

PAX System, or injunctive relief in the form of replacement and/or repair of the Vehicles and

PAX System, along with interest, attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**In Violation of New York's Uniform Commercial Code (U.C.C. §2-314, *et seq.*)**

85.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

86.    Defendant Honda is, and at all relevant times was, a merchant of the Vehicles equipped with the PAX Systems. Honda manufactures, markets, and sells the Vehicles with the PAX Systems preinstalled as a component of the Vehicles. Honda thus provided Plaintiffs and members of the Class an implied warranty that the Vehicles and the PAX Systems are merchantable and fit for the ordinary purposes for which they were sold, including, but not limited to being free of defects and not prone to premature wear, providing drivers with enhanced convenience and safety with maintenance costs not significantly higher than standard tires. Honda is in privity with Plaintiffs and members of the Class, each of them, and expressly warrants the Vehicles, of which the PAX Systems are a component, for 3 years or 36,000 miles.

87.    Defendant Michelin is, and at all relevant times was, a merchant of the PAX Systems installed on the Vehicles. Michelin thus provided Plaintiffs and members of the Class an implied warranty that the PAX Systems are merchantable and fit for the ordinary purposes for which they were sold, including but not limited to providing drivers with enhanced convenience and safety with maintenance costs not significantly higher than standard tires and being free of defects and not prone to premature wear. Michelin is in privity with Plaintiffs and Class members, each of them, and expressly warrants the PAX System tires for six years or for the useable life of the tread.

88.    The alleged defects constitute substantial defects which result in a failure to transport Plaintiffs and Class members in a safe, reliable fashion.

89.    The alleged defects are so basic that they render the Vehicles unfit for the ordinary purpose of providing transportation.

90.    The Vehicles and the PAX System are not specifically fit for the particular needs of the buyer.

- 23 -

91.    Plaintiffs and members of the Class purchased or leased the Vehicles with the reasonable expectation that the PAX System tires would be free of defects, would not wear prematurely, and would offer enhanced safety and convenience with maintenance.

92.    Contrary to the applicable implied warranties, the Vehicles and the PAX Systems are not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable and safe tires, and providing enhanced safety and convenience in the event of a flat tire.  Instead, the Vehicles and PAX Systems are defective, and unreasonably inconvenient and expensive to maintain and repair.

93.    When Defendants manufactured and sold the Vehicles and PAX Systems, they knew or should have known that the intended and ordinary purposes of the vehicles was to provide buyers with reliable, durable and safe tires, and enhanced safety and convenience in the event of a flat tire.

94.    Defendants knew or had reason to know that Plaintiffs and the Class purchased Vehicles equipped with the PAX Systems to obtain greater safety and convenience and to obtain tires that would last as long as, if not longer than, standard tires.

95.    Defendants knew or had reason to know that Plaintiffs and the Class purchased Vehicles equipped with the PAX System tires with the understanding that the PAX System tires would not wear prematurely and were free of defects.

96.    Defendants knew or had reason to know that Plaintiffs and the Class purchased Vehicles equipped with the PAX Systems with the understanding that the PAX System was an economical tire system that would not cost significantly more than standard tires to repair and/or replace.

97.    Defendants knew or had reason to know that Plaintiffs and the Class purchased Vehicles equipped with the PAX Systems to obviate the need to carry a spare tire.

98.    Defendants knew or had reason to know that Plaintiffs and Class members were relying on Defendants' skill or judgment to select or furnish suitable goods, in this instance, Vehicles and PAX Systems, and Plaintiffs and Class members were so relying.

99. The Vehicles and the PAX Systems are not adequately packaged and labeled, as Defendants have concealed or otherwise failed to disclose the defective nature of the Vehicles and the PAX Systems.

100. The Vehicles and the PAX Systems do not conform to the promises and affirmations uniformly issued by Defendants in their sales and marketing materials, warranties, and/or through their sales representatives.

101. Plaintiffs and members of the Class have used the Vehicles and PAX System for their intended and ordinary purpose of reliable and safe transportation.

102. Defendants' breaches of the implied warranties described herein constitute a violation of New York's Uniform Commercial Code.

103. Plaintiffs and members of the Class have suffered damages.

104. Plaintiffs, on behalf of themselves and all others similarly situated, seek actual (including but not limited to diminished value), incidental and consequential damages, pursuant to New York's Uniform Commercial Code.

### THIRD CLAIM FOR RELIEF
**Fraudulent Concealment/Nondisclosure**

105. Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

106. Defendants knew that there are insufficient facilities equipped to repair or replace PAX System tires.

107. Defendants knew that the cost of repairing and maintaining Vehicles with the PAX Systems is substantially higher than they represented.

108. Defendants knew that the PAX System tires are defective and fail in advance of their anticipated useful life under ordinary use and conditions.

109. Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class the facts described above.

110. Defendants were and continue to be under a duty to Plaintiffs and the Class to disclose these facts because:

- 25 -

         a.      Defendants are in a superior position to know the truth about the quality and nature of the Vehicles equipped with the PAX Systems and the problems associated with owning and maintaining the Vehicles;

         b.      Defendants make partial disclosures about the Vehicles and PAX Systems while not revealing the truth about their maintenance and quality; and

         c.      Defendants actively concealed from Plaintiffs and the Class the difficulty and expense of maintaining the Vehicles with PAX Systems and the defective nature of tires.

111.     The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay a premium price for) the Vehicle and PAX System.

112.     Defendants intentionally concealed and/or failed to disclose the problems with the Vehicles and PAX Systems for the purpose of inducing Plaintiffs and the Class to act thereon by purchasing more expensive Vehicles equipped with the PAX Systems.

113.     Plaintiffs and Class members justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of the Vehicles and/or replacement PAX Systems. Had Defendants disclosed the true character of the Vehicles and Systems, including, but not limited to the lack of facilities equipped to repair or replace the System tires, the unreasonably high cost of repair or replacement, and that the tires are defective and wear prematurely, Plaintiffs and Class members would not have purchased (or would have paid less for) their Vehicles.

114.     As a direct and proximate cause of Defendants' misconduct, Plaintiffs and Class members have suffered actual damages in that they own Vehicles with PAX System tires that have required, or will require, unreasonably expensive and inconvenient repair or replacement. Had Defendants disclosed the true quality, nature and drawbacks of the Vehicles and the PAX Systems, Plaintiffs and Class members would not have purchased (or would have paid less for) the Vehicles and/or the Systems. Plaintiffs and Class members have further suffered actual damages because the PAX System tires begin to wear and lose value prematurely

- 26 -

under ordinary use and conditions from the moment the Vehicle is first driven. Thus, Plaintiffs and Class members have also suffered unreasonable diminution in value of their Vehicles and tires as a result of Defendants' misconduct.

115.    Defendants' misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

116.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment

117.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

118.    By their wrongful acts and omissions described herein, including selling the Vehicles and the PAX Systems, Defendants were unjustly enriched at the expense of Plaintiffs and the Class.

119.    It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained by from their wrongful conduct in manufacturing, marketing and selling the Vehicles and PAX Systems.

120.    Plaintiffs on behalf of themselves and all others similarly situated, seek restitution from Defendants, and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, demand judgment against Defendants as follows:

a.    An order certifying the Class and any other appropriate subclasses, and designating Plaintiffs as Representatives of the Class and Plaintiffs' counsel as Class Counsel;

- 27 -

b.      Restitution and disgorgement to the extent permitted by applicable law, together with interest thereon from the date of payment, to the victims of such violations;

c.      Monetary damages, including, but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

d.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

e.      To the extent that Defendants have continued to market and sell the Vehicles in the manner challenged in this action, an order requiring Defendants to immediately cease their misconduct as set forth above, as well as enjoining Defendants from continuing to falsely market and advertise, conceal material information and conduct business via the fraudulent business acts and practices complained of herein; and an order requiring Defendants to engage in a corrective notice campaign;

f.      A permanent injunction mandating that Defendants pay in part or in whole for the repair and/or replacement of the Vehicles and/or PAX System;

g.      A declaration that Defendants are financially responsible for notifying all Class members of the pendency of this action;

h.      Reasonable costs and attorneys' fees;

i.      Statutory pre-judgment interest; and

j.      All other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, demand a jury trial in this action for all of the claims so triable.

///

///

CLASS ACTION COMPLAINT

DATE:  October 18, 2007

Daniel R. Lapinski
WILENTZ, GOLDMAN & SPITZER P.A.
110 William Street
26th Floor
New York, New York  10038-3901
Telephone: (212) 267-3091
Facsimile: (212) 267-3828
dlapinski@wilentz.com

By:

**[local counsel]**

Lori E. Andrus (SBN 205816)
Micha Star Liberty (SBN 215687)
Jennie Lee Anderson (SBN 203586)
ANDRUS LIBERTY & ANDERSON LLP
1438 Market Street
San Francisco, CA  94102
Telephone:(415) 896-1000
Facsimile: (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

Mark F. Anderson (SBN 44787)
KEMNITZER, ANDERSON, OGILVIE &
BREWER, LLP
445 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone: (415) 861-2265
Facsimile: (415) 861-3151
mark@kabolaw.com

James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
SHEPHERD,  FINKELMAN, MILLER &
SHAH, LLC
 35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshaw@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

James E. Miller
Patrick A. Klingman
Karen M. Leser  (SBN 231189)
SHEPHERD,  FINKELMAN, MILLER &
SHAH, LLC
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

Thomas D. Mauriello
THE LAW OFFICES OF THOMAS D.
MAURIELLO, APC
22 Battery Street, Suite 1000
San Francisco, CA 94111
Telephone: (415) 677-1238
Facsimile: (415) 677-1233
tomm@maurlaw.com

*Attorneys for Plaintiffs and the Class*

CLASS ACTION COMPLAINT